Bradley S. Schrager (Nevada Bar # 10217)
Don Springmeyer (Nevada Bar # 1021)
**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**
3556 East Russell Road
Las Vegas, NV 89120
(702) 341-5200
Fax #: (702) 341-5300
BSchrager@wrslawyers.com

Michael J. Gottlieb
*Admitted Pro Hac Vice*
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Ave, N.W.
Washington, DC  20015
Tel: (202) 237-2727
Fax: (202) 237-6131
mgottlieb@bsfllp.com

*Attorneys for Plaintiff Nevada State Democratic Party*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| NEVADA STATE DEMOCRATIC PARTY,<br><br>                          Plaintiff,<br><br>   v.<br><br><br>NEVADA REPUBLICAN PARTY, DONALD J. TRUMP FOR PRESIDENT, INC., ROGER J. STONE, JR., and STOP THE STEAL INC.,<br><br>                          Defendants. | Case No. 2:16-cv-02514-RFB-NJK<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANTS ROGER J. STONE, JR., AND STOP THE STEAL INC.'S MOTION TO DISMISS** |

## **SUMMARY OF ARGUMENT**

Plaintiff Nevada State Democratic Party submits this Reply Memorandum of Law in response to Defendants Roger J. Stone, Jr., and Stop the Steal Inc.'s (for the purposes of this brief only, "Defendants") Motion to Dismiss, filed November 4, 2016 (Doc. No. 50).  Defendant Stone seeks dismissal for lack of personal jurisdiction, and Defendants seek to dismiss this action for insufficient service of process.  Both arguments are without merit.

First, this Court has specific personal jurisdiction over both Defendants under well-established Supreme Court and Ninth Circuit law.  Nevada's long-arm statute extends personal jurisdiction in its courts to the limits of constitutional due process.  Because Defendants have targeted their unlawful conduct at Nevada, they have sufficient minimum contacts with the forum to establish specific personal jurisdiction for purposes of the claims at issue here.

Second, with respect to service of process, formal service under Rule 4 of the Federal Rules of Civil Procedure is not necessary in order for Plaintiff to obtain relief under Rule 65. Plaintiffs seek a temporary injunction against Defendants restraining their unlawful conduct. Pursuant to Rule 65, only "notice" to the opposing party, not service of process, is required for the granting of a preliminary injunction, and federal courts are empowered to grant a temporary restraining order without any notice whatsoever.  There is no question that Defendants have actual notice of these proceedings.  Consistent with this Court's Order of November 3, 2016 (Doc. No. 47), in the morning of November 4, 2016, Plaintiff served a copy of that Order on Defendants through their attorney, along with a copy of Plaintiff's Emergency Motion. Defendants' counsel appeared at this Court's hearing in the afternoon of November 4, having filed Defendants' Motion to Dismiss only a few hours before.

Even though formal service is not required for an injunction to issue, Defendant Stop the Steal has been served consistent with Fed. R. Civ. P. Rule 4. Plaintiff properly served Defendant Stop the Steal Inc. at its business address on November 2, 2016. Stone is the Founder of Stop the Steal, and his declaration concedes that at a bare minimum he is its agent for purposes of its planned "exit polling" activities on November 8. Plaintiff also served Stone, an agent of Stop the Steal Inc., at Stop the Steal Inc.'s business address on November 2, 2016, and has made extensive attempts to serve Stone by other means, including at his home.

Both Defendants are subject to the personal jurisdiction of this Court and have the actual notice of these proceedings required for a preliminary injunction to issue. This Court should therefore deny the Stone Defendants' motion to dismiss.[1]

## ARGUMENT

### I. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER BOTH DEFENDANTS

This Court has specific personal jurisdiction over both Defendants. "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc). Nevada's long-arm statute extends personal jurisdiction in Nevada's courts to the limits of constitutional due process. *See* Nev. Rev. Stat. § 14.065(1) ("A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the

---

[1] Even if Rule 4 service on Stone has not yet been effective, the proper approach would not be granting the motion to dismiss with respect to Stone. The Court would still have power to issue the requested temporary relief under Rule 65, given that Stone has actual notice, and Stone's motion to dismiss for lack of proper service is otherwise premature. *See* Fed. R. Civ. P. 4(m) (allowing plaintiffs 90 days to effectuate service before a court "on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time").

United States."). For specific personal jurisdiction over a non-resident defendant to be proper under the Due Process Clause, the defendant must have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

In the Ninth Circuit, courts "analyze specific [personal] jurisdiction according to a three-prong test":

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc.*, 433 F.3d at 1205-06. Defendant Stop the Steal Inc. makes no attempt to contest specific personal jurisdiction, but Defendant Roger J. Stone, Jr., claims that he lacks sufficient minimum contacts with the State of Nevada for jurisdiction to be proper here. Specifically, Defendant Stone argues that he "has no contact with [Nevada] save for tourism." Motion to Dismiss at 8. Stone also argues, using language borrowed from case law analyzing personal jurisdiction in contract claims, *see Yahoo! Inc.*, 433 F.3d at 1206, that has not "purposefully availed himself of the privileges of conducting activities in Nevada." *Id.*

The appropriate test in this case is not the contract-claim test, but the tort-claim test, which asks whether a nonresident defendant – here, Stone – has "purposefully direct[ed] his activities at the forum state." *Yahoo! Inc.*, 433 F.3d at 1206. This is "an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions occurred within the

4

forum." *Id.* Under the tort-claim test, Plaintiff must allege that Defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, [and] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* "The 'brunt' of the harm need not be suffered in the forum state"; moreover, "it does not matter that even more harm might have been suffered in another state." *Id.* at 1207.

Specific personal jurisdiction exists as to Defendant Stone under the tort-claim test, because he has directed his voter intimidation and exit polling activities expressly at the State of Nevada. As described in the Complaint, Stone is recruiting Trump Supporters through Stop the Steal, whose website actively signs up Trump supporters to "volunteer" to fight "voter fraud." Compl. ¶¶ 34-38. To combat this claimed fraud, Stone is recruiting volunteers in key battleground states such as Nevada to engage in so-called "exit polling" designed to discourage and intimidate individuals in majority-minority communities from voting. *Id.*; *see* Expert Report and Declaration of Mark S. Mellman at 7 ("Exit polls are conducted to project the outcome of an election as accurately as possible, not to prevent fraud."); *id.* at 1 ("Given Mr. Stone's stated political biases and the methodology he has employed—i.e., targeting Democratic and minority precincts—his exit polling strategy appears only designed to intimidate voters in an attempt to influence the election and suppress the vote.").

Stone has purposefully directed his exit polling activities at Nevada. As of November 4, 2016, the Stop the Steal website, https://stopthesteal.org/states/nevada/, stated that Stop the Steal had signed up 61 "Registered" exit polling volunteers for the State of Nevada. Declaration of Michael J. Gottlieb, Esq. ("Gottlieb Declaration") at Ex. 1 (Stop the Steal Nevada Website). Stone has himself stated that he has decided to send Stop the Steal exit polling volunteers to Clark County, Nevada. *See* Gottlieb Decl. at Ex. 2 (October 25, 2016 Infowars Video Interview of

Roger J. Stone) ("We're going to look at those precincts in Nevada, for example, in Clark County."); *id.* at Ex. 3 (NBC News Article, October 27, 2016).

Stone's involvement—indeed, his founding role—in Stop the Steal goes back at least to April 2016. In a video interview posted on April 17, 2016, Stone explained to a reporter that because of his worries about the Republican National Committee "stealing" the nomination from Donald Trump, he would be organizing—in his words—a "Stop the Steal rally" at the Republican National Convention in Cleveland, Ohio. Gottlieb Decl. at Ex. 7 (CBS Miami Interview, April 17, 2016). In the interview, Stone said that "we need a show of force" to dissuade the delegates from voting for someone other than Trump. *Id.* Stone announced his intent to give out the names and hotel room numbers of delegates who did not plan to vote for Trump, claiming that it would offer Trump supporters a chance to "petition" them. *Id.* Asked if he meant to intimidate the delegates, Stone replied, "when did I say violence? I didn't say, 'go to their rooms and kick the [expletive] out of them' . . . now, if that should *happen*, that would be beyond *my* control . . . ." *Id.* Stone continued to explain that "'strength theater' is necessary to make a statement to the whole United States." *Id.*

Stone's work through Stop the Steal has since involved extensive public efforts to recruit and encourage "exit pollers" for the upcoming General Election on behalf of Stop the Steal. These efforts, and his public statements about his role in the planned "exit poll," make it hard to take seriously Defendants' claim that Stone has no legally significant relationship with Stop the Steal. On October 27, 2016, NBC News reported that Stone "has vowed to check the validity of the presidential election results by setting up what he describes as his own exit-polling operation." Gottlieb Decl. at Ex. 3 (NBC News article, Oct. 27, 2016). On October 25, 2016, Stone told Alex Jones on Jones' internet talk show program that "all signs point to Hillary trying to steal this

election," and that Stone was therefore "hunkered down right now in an undisclosed location with a bunch of I.T. people and computer jockeys and other political scientists and at least two pollsters who are helping us put the finishing touches on the exit poll that we intend to conduct nationally for stopthesteal.org." Gottlieb Decl. at Ex. 2 (Alex Jones Show, October 26, 2016). Stone stated that he would be "putting 100 percent of [his] time between now and the election into being able to chart exactly what happens." *Id.* Then, on the October 30, 2016, episode of that the Alex Jones show, Stone responded to Jones's question about what viewers could do to affect the outcome of the election by saying:

> Well, Alex, I've got to keep going back to Election Day, and implore those who believe in a fair and honest election to please go to stopthesteal.org and sign up as a volunteer to work on election day. We're trying to cover 7,000 specific precincts in the swing states. . . . **We** need your elbow grease, **we** need your boots on the ground, **we** need your shoe leather to help us. **We** will train you, **we** will help you, **we** will assign you . . . .

Gottlieb Decl. at Ex. 6 (Alex Jones Show, October 30, 2016). On November 1, 2016, Stone tweeted a link to stopthesteal.org with a message that asked people to "volunteer or contribute today!" Gottlieb Decl. at Ex. 4 (Roger J. Stone, Jr. Tweet, Nov. 1, 2016). On November 2, 2016, Stone again tweeted a link to stopthesteal.org, this time with the message "Help us Stop the Steal." *Id.* (Roger J. Stone, Jr., Tweet, Nov. 2, 2016).

In short, Stone has repeatedly and publicly acknowledged his founding and managing role in Stop the Steal, and continues to hold himself out as its agent, soliciting volunteers and donations on its behalf. Even Stone admits that he "assist[s] in *managing* one of its projects." Motion to Dismiss at 2 (Declaration of Roger J. Stone, Jr.) (emphasis added). Notably, the "project" referenced by Stone is the very project at issue in this lawsuit – Stop the Steal's "exit polling" and related Election Day activities. It also does not matter if, as he claims, Stone is doing all this on a "volunteer" basis. *Id.* By his own admission, Stone has purposefully directed

7

his pretextual exit polling efforts at Nevada through his activities on Stop the Steal's behalf. Thus, this Court has specific personal jurisdiction over Stone for purposes of this lawsuit.

## II. SERVICE OF PROCESS ON DEFENDANTS WAS ADEQUATE FOR PURPOSES OF A TEMPORARY RESTRAINING ORDER UNDER RULE 65

Defendants' motion to dismiss for lack of proper service of process should be denied.

To begin with, and critically, formal service under Federal Rule of Civil Procedure 4 is not necessary in order for Plaintiff to obtain a temporary injunction against Defendants under Rule 65. Under Rule 65, only "notice" to the opposing party, rather than formal service of process, is required for the granting of a preliminary injunction.[2] *See Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366, 1370 (N.D. Ga. 2008) ("Rule 65 of the Federal Rules of Civil Procedure, however, only requires that a party have notice of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order."); *SEC v. Kimmes*, 753 F. Supp. 695, 700-01 (N.D. Ill. 1990) ("In the context of preliminary injunctive relief, the requirement of personal jurisdiction must be read simply in terms of notice to the enjoined party . . . rather than as demanding the existence of in personam jurisdiction via service of process. If it were otherwise, the entire structure of Rule 65—with its basic concept of issuing binding TROs and preliminary injunctions—would be sapped of strength entirely."); *see also, e.g.*, *H-D Michigan, LLC v. Hellenic Duty Free Shops, S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) (the argument that "the district court erred by issuing a TRO prior to formal service" is "preposterous," and is "refuted by the plain language of Rule 65"); *Glasser v. Blixeth*, No. C14-1576 RAJ, 2014 WL 12514894 (W.D. Wash. Nov. 14, 2014) ("Indeed, this court could have issued this TRO *ex parte*, absent a showing of any notice to Defendants.");

---

[2] Indeed, under certain especially urgent circumstances, federal courts are empowered to grant a temporary restraining order *without* any notice whatsoever. *See* Fed. R. Civ. P. 65(b)(1).

*United States v. Lazare*, No. 14-cv-1075-APG-VCF, 2014 WL 3765397 (D. Nev. July 2, 2014) (issuing a TRO without notice to the opposing party); Fed. R. Civ. P. 65(d)(2) (an injunctive order binds certain non-parties, such as the parties' agents, and "other persons who are in active concert or participation" with the parties or their agents, "who receive actual notice of it by personal service *or otherwise*") (emphasis added).

There is no question that Defendants have actual notice of these proceedings. Consistent with this Court's Order of November 3, 2016 (Doc. No. 47), on the morning of November 4, 2016, Plaintiff served a copy of that Order on Defendants through their attorney, along with a copy of Plaintiff's Emergency Motion. Counsel for Defendants acknowledged receipt of the Order by return email. Mr. Stone's public communications also clearly indicate his actual knowledge of these proceedings. He has sent out messages via his Twitter account regarding the arguments advanced in this very lawsuit—including publicly commenting on the arguments made regarding service in this case. Gottlieb Decl. at Ex. 4 (Roger J. Stone, Jr. tweets); Ex. 5 (Roger J. Stone, Jr. tweet saying "Nev Dem lawyers LIE in court perjuring themselves as 2 whether I have been legally served. Defrauding the Court #sanctions @stopthesteal").

Because both Defendants have actual notice of the proceedings against them, the Court may grant a preliminary injunction regardless of formal service.

With respect to formal service, Defendants have not seriously contested that Defendant Stop the Steal was properly served. The only argument advanced in Defendants' brief is that the designated custodian of records for Stop the Steal, Mr. Brad Boeck, was not personally served at his residence. That, of course, is irrelevant. As the designated custodian of records for Stop the Steal, Mr. Boeck may *not* be served at his personal residence, but instead was properly served at the location designated for serving Stop the Steal, the organization for which he serves. As

9

demonstrated by Stop the Steal's Form 8871, that address is 3843 S. Bristol Street Suite 312, Santa Ana, CA, 92704, and Plaintiff served Defendant Stop the Steal at that exact address. *See* Declaration of Dawn L. Smalls at Ex. 3 (Doc. 37-1).

With respect to Defendant Stone, an agent of Stop the Steal Inc., Plaintiff served at Stop the Steal Inc.'s business address on November 2, 2016, and has made extensive attempts to serve Stone by other means, including at his home—attempts that Stone appears to be evading. In any event, Defendants' argument that service on Defendant Stone at Stop the Steal Inc.'s address was insufficient is of little moment at present, because, as explained above, a temporary injunction can issue without formal service.[3] Moreover, because Defendant Stone is an agent of Defendant Stop the Steal, which clearly has been properly served, any order that this Court might issue against Defendant Stop the Steal would bind Defendant Stone as well. *See* Fed. R. Civ. P. 65(d)(2).

## III.  CONCLUSION

The Court should deny Defendants Roger J. Stone, Jr., and Stop the Steal Inc.'s motion to dismiss.

Respectfully submitted,

November 5, 2016                                       /s/   Michael J. Gottlieb

                                                                Michael J. Gottlieb
                                                                **BOIES, SCHILLER & FLEXNER LLP**
                                                                5301 Wisconsin Ave, N.W.
                                                                Washington, DC  20015
                                                                Tel: (202) 237-2727
                                                                Fax: (202) 237-6131
                                                                mgottlieb@bsfllp.com

---

[3] If Stone has not yet been properly served, his motion to dismiss for lack of service is premature, and should be denied on that basis.  Federal Rule of Civil Procedure 4(m) provides a plaintiff with 90 days to effectuate service of the complaint (and more, if a defendant evades service), before a motion to dismiss for lack of service may be granted.

Bradley S. Schrager (Nevada Bar # 10217)
Don Springmeyer (Nevada Bar # 1021)
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
3556 East Russell Road
Las Vegas, NV 89120
(702) 341-5200
Fax #: (702) 341-5300
BSchrager@wrslawyers.com

Marc E. Elias
Bruce V. Spiva
*Admitted Pro Hac Vice*
Perkins Coie LLP
700 13th Street, Suite 600
Washington, DC 20005
Tel: (202) 434-1609
Fax: (202) 654-9126
melias@perkinscoie.com

Dawn L. Smalls
*Admitted Pro Hac Vice*
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Tel: (202) 754-4216
Fax: (212) 446-2350
dsmalls@bsfllp.com

*Attorneys for Plaintiff*

11