**Paul Rolf Jensen, Admitted Pro Hac Vice**
**JENSEN & ASSOCIATES, APC**
*Trial Lawyers*
**650 Town Center Drive, Twelfth Floor**
**Costa Mesa, California 92626**
**(714) 662-5527**

JENNINGS & FULTON LTD.
ADAM R. FULTON, Esq., Nevada State Bar No. 11572
Email:afulton@jfnvlaw.com
6465 West Sahara Avenue, Suite 103
La Vegas, Nevada 89146
Telephone (702) 979-3565
facsimile (702) 362-2060

Attorneys Specially appearing[1] for Roger J. Stone and Stop the Steal, erroneously sued as Stop the Steal, Inc.

# United States District Court
## District of Nevada

| | |
|---|---|
| Nevada Democratic Party, | No. 2:16-cv-02514-RFB-NJK |
| Plaintiff, | |
| vs. | MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF |
| Nevada Republican Party, et al. | |
| Defendants. | [filed concurrently with Declarations of Paul Rolf Jensen, Roger J. Stone and Travis Irvine] |

---

[1] The Court has graciously allowed Defendants Stone and Stop the Steal, through counsel, to file this brief without waiving their jurisdictional claims and without making a general appearance.

-1-

Now come defendants Roger J. Stone and Stop the Steal[2], through counsel, and hereby submit their brief in opposition to the plaintiff's request for injunctive relief:

**MEMORANDUM OF POINTS AND AUTHORITIES**

I

<u>EVERY ISSUE BEFORE THIS COURT HAS ALREADY BEEN LITIGATED AND DEFENDANTS STONE AND STOP THE STEAL HAVE PREVAILED</u>

This Court should follow the ruling and holding in identical litigation brought in the District of Arizona, which late Friday afternoon utterly and completely rejected Plaintiff's every argument. While we concede the doctrine of collateral estoppel is not technically applicable, because the plaintiff is different, the Court should take judicial notice of the fact that except for the name of the plaintiff being different, the allegations as pertaining to Stop the Steal and Roger Stone[3]. Attached to the accompanying Declaration of Jensen are copies of the complaint and motion for restraining order filed in that case, as well as the final order of the U S District Court for the District of Arizona. The findings of fact and conclusions of law of that Court are totally and immediately applicable here in every respect. For that reason, the Court should deny the pending motion.

---

[2] As evidenced by the Declaration of Jensen filed in support of these Defendants' Motion to Dismiss, Stop the Steal is a political organization registered with the IRS under section 527 of the Internal Revenue Code. It is not a corporation or business entity of any kind, and has no members, employees or other existence.

[3] The allegations against the state Republican Party here and the Trump campaign may be ever so slightly different here than in Arizona, that is not the case with defendants Stone and Stop the Steal. The allegations against those parties are in every way, and every word, identical in both this case and the case filed in the District of Arizona.

II

## DEFENDANTS STONE AND STOP THE STEAL JOIN THE BRIEF AND ARGUMENTS OF THEIR CO-DEFENDANTS

To the extent it is helpful to the Court, our position is that we join in and adopt the arguments and brief of our co-defendants as far as the Court finds are relevant to deciding the question as to Mr. Stone and Stop the Steal. For the sake of brevity, since the Court has already made a decision as regards the state party and the Trump campaign, there should be no need to reiterate those same arguments in this brief, but to be clear, we do agree with those arguments and the findings the Court has already reached.

III

## THE LAW GOVERNING INJUNCTIVE RELIEF IMPOSES A BURDEN THE PLAINTIFF HAS NOT, AND CANNOT, MEET

The Supreme Court has observed that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); see also *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

*A.   The Plaintiff cannot possibly meet its burden under the Voting Rights Act*

Under Section 11(b) of the Voting Rights Act, the plaintiff must show the defendants objectively intend to intimidate, threaten or coerce (or at least attempt to do so) a person for voting or attempting to vote. *Olagues v. Russoniello,* 770 F.2d 791, 804 (9th Cir. 1985). There is utterly no evidence, not one scintilla of admissible

proof that such is the intent of either Mr. Stone or Stop the Steal.  The "evidence" they have offered of two random –and moreover, *unknown*, people tweeting[4] their photos out is not attributable to either Mr. Stone or Stop the Steal.  Absent such evidence, the plaintiff cannot, as a matter of law, meet their burden.  The court has already reached this conclusion as to the Nevada Republican Party and the Trump campaign, and it can only come to the identical conclusion concerning these remaining defendants.

B.   *The Plaintiff cannot possibly meet its burden under the Ku Klux Klan Act*

By the same token, Under the Ku Klux Klan Act a cause of action only lies in the face of a conspiracy.  The complaint and motion argue this conspiracy was between Mr. Stone, the Trump campaign and the state Republican party.  Since the court has already found that no conspiracy existed as between the campaign and the party, there is no one left for Mr. Stone to have conspired with, and of course he didn't conspire with anyone, as his declaration and the court's previous findings establish beyond any question.  Furthermore, in order for the plaintiff to prevail under the Klan Act, the Court would have to find that Mr. Stone not only was part of a conspiracy, but that this phantom conspiracy have at its purpose the specific intent to "prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner,.." 42 U.S.C. §1985 (3).

---

[4] Among other "evidence", Plaintiff produces a Tweet from an annonymous Trump supporter, unconnected in any way to either Mr. Stone or Stop the Steal, in Florida stating he planned to be "wear'n red at polls," "watch'n fer shenanigans," and "haul ya away," accompanied by a photo of a pickup truck and a person-sized cage built in the bed, surrounded by American flags.  However troubling, there is nothing connected to either Nevada about this photo (the license plate on the truck is from Florida.  Absent any connection to Nevada, Mr. Stone or Stop the Steal, this –the strongest piece of so-called evidence the plaintiff proffers, the Court must deny this motion.

Furthermore, the plaintiff has made no showing of racial animus , and the specific provision of the Act relied upon by plaintiff, the "support and advocacy" clause, cannot, by its plain words, be applied against a non-state actor.  Of course, there are no facts to support plaintiff's claims but we aver that even were there to be evidence, the Act cannot be applied to any defendant in this case.

Plaintiff bears the burden of providing the evidence to take its claims from a nebulous concern over Mr. Stone's statements (hearsay and from years, if not decades past) to a likelihood that the named Defendants and those acting in concert with them will intimidate, threaten coerce, or attempt to intimidate, threaten or coerce, voters.  Mr. Stone's declaration, submitted concurrently herewith, evidences[5] that all of the inferences the Plaintiff wishes drawn from their "evidence" is wrong in each and every particular.  Mr. Stone's declaration testimony is that he has no improper purpose whatsoever, and no attempt to conduct any exit polling operations in Nevada or any where else, apart from those for Stop the Steal.  Mr. Irvine's testimony is in accord with Mr. Stone's, and evidences that the tiny operation in Nevada that Stop the Steal plans to mount will only involve a small number of persons, primarily in

---

[5] The Court pointed out on Friday that the declaration testimony of a witness who is not available to testify is not necessarily entitled to the same weight of a live witness in court, it is equally true that courts everywhere and every day give considerable weight to declaration evidence by witnesses who are not personally available to testify.  In deciding what weight to accord Mr. Stone's declaration, we ask the Court to take into consideration the emergency nature of this hearing, the fact that Mr. Stone has not been served with any of the papers in this case, and that the hearing is taking place the day before the election, when Mr. Stone (and indeed all possible witnesses in this case) have competing urgent demands on their time.  Finally, we also ask the court to consider whether there are any witnesses for the Plaintiff whose testimony is only in writing, and that the Plaintiff failed to produce any particular declarant for in-person testimony.  The Court should not have one standard for the Plaintiff and another for the Defendants.

Clark County, and that there is no targeting of precincts based on race or any other criteria, and that all of these people will be strenuously warned, not only on the website, but by email and conference phone call, that they must follow specific, easily understood rules, which rules mirror the law.

Plaintiff has produced no evidence, none, of any specific actions that exit pollers would take, things they would say, or other facts that would allow the Court to evaluate whether such actions or statements could or would constitute intimidation, instead Plaintiff invites the Court to engage in rank speculation about what might or could happen.  The Court should resist Plaintiff's invitation.  Thus, absent any shred of evidence of plans for intimidation, racial targeting, or any other improper, much less illegal, conduct, this case is in vastly different than *Daschle v. Thune*, where the court had before it concrete examples of voter intimidation by the defendants' supporters that had actually occurred during early voting, thus removing any air of speculation about the likelihood of harm to voters or the plaintiff.  Thus, Plaintiff cannot, as a matter of law, on the evidence before the Court, meet its heavy burden to establish it is likely to prevail on the merits.

## IV
## THE PLAINTIFF'S SCANT EVIDENCE AND RANK CONJECTURE DO NOT MERIT THE EXTREME RELIEF OF PRIOR RESTRAINT ON DEFENDANTS' FIRST AMENDMENT RIGHTS

Core political speech deserves the highest protections the law can afford.  The right is enshrined in the very first of the amendment to our Constitution.  Only upon the highest showing of imminent harm is prior restraint justified.  In denying the restraining order sought in the Pentagon Papers case, the Supreme Court held, "Any system of prior restrains of expression comes to this Court bearing a heavy

presumption against its constitutional validity." *New York Times v. Sullivan*, 403 U.S. 713, 714 (1971), citing *Bantam Books v. Sullivan*, 382 U.S. 58, 70 (1963).

The relief sought is completely disproportional to the demonstration of any likely harm. "Public policy requires that preliminary injunctions, especially those that stand to potentially chill a person's right to free speech, no matter how disagreeable that speech may be, should only be granted in the most extraordinary of circumstances and upon the most conclusive showing of all of the Dataphase elements. *Northland Ins. Companies v. Blaylock*,115 F.Supp.2d 1108, 1125 (D. Minn. 2000).

Just as the right to vote is fundamental, so too is the right to political speech and the right to associate. See, e.g., *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966) ("there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs....[including] discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes"; *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 146 (2d Cir. 2000) ("The right to political association also is at the core of the First Amendment, and even practices that only potentially threaten political association are highly suspect.") (internal quotations and citation omitted). While the Court may only enjoin Defendants, the injunction would nonetheless have a chilling effect on protected First Amendment speech by others. Indeed, Plaintiff has not provided the Court with a narrowly-tailored injunction that would not unintentionally sweep within its ambit other activities that constitute exercise of freedom of speech. See, e.g., *Rodriguez v. Robbins,* 715 F.3d 1127, 1133 (99th Cir. 2013) ("An overboard injunction is an abuse of discretion."); *Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000) ("one basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what

the injunction actually prohibits") (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 444 (1974)); *Waldman Pub. Corp. V. Landoll Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) ("an injunction should not impose unnecessary burdens on lawful activity").

## V

### STOP THE STEAL ISN'T REQUIRED TO BE SCIENTIFIC IN ITS EXIT POLL

Plaintiff has offered testimony –by Declaration only and not live testimony– that Stop the Steal's "exit polling" is unscientific. It is conceded that what Mr. Stone and Stop the Steal refer to as an "exit poll" certainly don't meet the parameters for the plaintiff's expert, but that is of no moment whatsoever. Put differently, Stop the Steal's efforts might not be successful or achieve its ends, but even exit polling that fails to meet the standard of plaintiff and its expert is nevertheless still protected under the First Amendment and not in any way improper. On the other hand, Defendants have offered Declaration testimony of Mr. Stone, and live testimony of Mr. Irvine, to rebut any suggestion that the tiny little exit polling effort planned in Nevada is pretextual of something else. Mr. Stone has described the methodology to be employed, which Mr. Irvine will be responsible for informing the volunteers to execute. It does not follow that merely because this methodology does not meet Plaintiff's expert's standards that it is pretextual of anything nefarious. Plaintiff's conspiracy theories have already been rejected by this Court as regards the state party and the Trump campaign, and should equally be disregarded as fantasy as regards Mr. Stone and Stop the Steal.

There is simply no requirement in law that exit polls be scientific, or even that exit polls are well calculated to achieve their stated ends. It isn't even required that Defendants' planned efforts be rightly described as "exit polling". Stop the Steal isn't required by the law to operate a polling firm to conduct exit polling. There is no

-8-

law or regulation requiring any exit polling to be standardized, reliable, or to serve any purpose, much less to serve a legitimate purpose–only that it not serve an expressly illegitimate purpose. Therefore, it is not for this Court to decide whether or not resultant information may be of use. Instead the Court must determine, and the Plaintiff has the burden to prove –as opposed to the defense having the burden to *dis*-prove–such activity, be it called "exit polling" or anything else, violates voters' rights.

At base, Stop the Steal is not prohibited from conducting exit polling, so long as it does so in accordance with all applicable laws and regulations. See, *Daily Herald Co. v. Munro*, 838 F.2d 380 390 n.8 (9th Cir. 1988) (upholding the District Court's finding that exit polling did not interfere with citizens' right to vote without showing that polling was disruptive, intended to interfere with any voter's rights, or that someone did not vote or voted differently due to polling). Unscientific, targeted, unreliable, and even useless exit polling by itself, does not violate any voters' rights. The evidence of Mr. Irvine and Mr. Stone, of course, establish that their planned efforts are, to some degree even if not to the degree Plaintiff would prefer, scientific, untargeted and useful.

Without a demonstration that Stop the Steal's planned exit polling is likely to intimidate, the Court may not enjoin it from conducting its polling. Plaintiff has failed to proffer any evidence that any voter is likely to be intimidated, threatened, or coerced due to the polling. Instead, Plaintiff offers conclusory statements based only on the purported motivation of Stop the Steal and its volunteers. Plaintiff does not offer the vital evidentiary components that would allow this Court to infer likely or intended intimidation: precisely what Stop the Steal plans to do, where it plans to do it, how such conduct will intimidate voters, or even if the exit polling will ultimately occur. The factually unsubstantiated, though informed, opinion of Plaintiff's expert does not obviate the need for further evidence of either Stop the Steal's alleged

stratagem to intimidate non-white voters, or indeed any evidence of what Stop the Steal will do at the polls. Without such evidence, this Court cannot evaluate whether Defendants' activities might constitute intimidate voters or not, and thus Plaintiff has failed to meet its burden.

Plaintiff has also produced evidence that Stop the Steal and Mr. Stone recruited and mobilized groups of volunteers known as "vote protectors," who are encouraged to identify themselves as reporting for vote protections, approach voters at the polls, and inquire about election fraud. Plaintiff also alleges that Mr. Stone is using social media to urge uncredentialed observers to wear red shirts on Election Day. However, other than perhaps concerning a message printed on a t-shirt (which is not alleged here) there is no prohibition regarding the clothing of uncredentialed observers at polling locations, nor has Plaintiff provided any legal precedent holding that such activity is unconstitutional, likely to intimidate voters, or will otherwise hinder voter participation. Neither the encouragement of the activities alleged, nor the activities themselves are *per se* prohibited. Since it was Plaintiff's burden to illustrate that the activities are likely to intimidate, threaten, or coerce voters and their evidence has failed to do so, the Court must deny them relief.

## VI

## CONCLUSION

The Supreme Court, in declining whether to enjoin a voter identification law on the eve of an election, ruled that "Given the imminence of the election and the inadequate time to resolve the factual disputes, our action today shall of necessity allow the election to proceed without an injunction..." *Purcell v Gonzalez*, 549 U.S.1, 3 (2006). Even if this Court found there was some evidence offered by the Plaintiff, which we strenuously aver it should not, then the Court should follow the lesson of

*Purcell* and decline to issue an injunction the day before an election on contested facts without a full opportunity for a hearing on regular notice.

    For all these reasons, the court should deny the motion.

Dated: 6 November 2016            Respectfully submitted

*/s/ Paul Rolf Jensen*

_____
PAUL ROLF JENSEN, Attorney for
ROGER J. STONE and STOP THE STEAL

-11-